CATHEY v. ROBERTSON.

5-3666                                    395 S. W. 2d 22

Opinion delivered November 1, 1965.

*Ed B. Cook*, for appellant.

*H. G. Partlow, Jr.* for appellee.

GEORGE ROSE SMITH, J. In this proceeding the appellant, James M. Cathey, is contesting the will of his brother Barton on the ground of testamentary incapacity. Barton died January 8, 1964, at the age of 74. He was survived by the appellant, by a half sister, and by several nieces and nephews. His will, executed September 26, 1963, left all his property to one of his nieces, Erma Lorene Mays, aged 60. The probate court upheld the will. The only question on appeal is whether the trial court's decision is against the weight of the evidence.

For some three years, beginning in 1940, Barton was of unsound mind and was confined to the State Hospital. It does not appear that after his release from that institution any physician had an opportunity to consider the matter of Barton's sanity. No medical

expert testified at the trial. The contestant sought to establish by lay testimony that Barton was still suffering from insane delusions during the latter part of his life, when the will was executed.

The contestant called eleven witnesses, among whom the most outspoken were related to the Cathey family by blood or marriage. The proof most favorable to the appellant's attack upon the will indicates that Barton often made irrational declarations about himself and his powers. At times he claimed to be God, to possess supernatural gifts, and to have spirits available to do his bidding. He made various absurd claims, such as the ability to control the universe, to bring World War II to an end, to destroy every living person on earth, to use the lightning for his own purposes, and to silence a radio station. It is perhaps odd that the witnesses do not intimate that Barton appeared to be especially vehement or excited or overwrought in making these assertions. To the contrary, the witnesses seem to be narrating statements made in a conversational manner.

Regardless of what Barton may have *said* from time to time, we are impressed by the almost total lack of irrationality in what he is shown to have *done*. The contestant, James Cathey, testified that upon one occasion Barton set fire to one of James's fields and burned up seven or eight acres of beans, but this is about the only indication of activity that might be regarded as evidencing unsoundness of mind.

There is, we think, sufficient proof in the record, including some testimony adduced by the contestant, to support the decision reached by the trial court. Long before the execution of the challenged will Barton had inherited from his mother forty acres of farm land and from his father an undivided one-third interest in another forty. For years Barton managed his property himself, farming part of it and renting part of it to tenants. He looked after his own finances and, living with great frugality, accumulated a modest estate. In addition to his farming operations Barton had a blacksmith shop and is shown to have been an unusually skill-

ful mechanic. He had only a third grade education, but he read extensively and was able to follow the directions in magazine articles in carrying out creative projects in his shop.

An accountant who prepared Barton's income tax returns from 1957 through 1961 testified that he seemed to be mentally normal. A grocer with whom Barton traded for ten years described him as a sensible man. A neighbor who sold Barton farm machinery on credit testified that although Barton was eccentric he was always sharp in his business dealings. A salesman who sold Barton a car for $1,995 cash in 1960 or 1961 considered him to be "as sane as anybody." Albert Ellis, one of the contestant's witnesses, was recalled for cross-examination and testified that he considered Barton to be sane.

In our opinion the will does not, as the appellant contends, involve an unnatural disposition of the testator's estate. Barton is shown to have had a controversy with his brother, the contestant. He also bore a grudge against his sister, who predeceased him by a few months, because she had caused him to be committed to the State Hospital in 1940. In the circumstances there is nothing especially unusual in the testator's election to leave his property to his niece. With respect to the will itself we may add that both the attorney who prepared it and the secretary who acted as the other attesting witness testified in favor of the validity of the will.

It will be remembered that the will was executed in September of 1963. At that time there was a dispute between Barton and his brother and sister about the title to the forty acres they had inherited from their father. In October and November, after the execution of the will, this brother and sister negotiated, through their attorney, for an exchange of deeds by which the dispute about the title would have been settled. There is a manifest inconsistency between the appellant's insistence that Barton was incapable of making a will in September of 1963 and his efforts to obtain a deed from Barton later in the same year.

890

We are of the opinion that the judgment must be affirmed; it is so ordered.